**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROSEMARY LEVERETT, Individually,** | ) | |
| **and as Executrix of the Estate of HUGH** | ) | |
| **ROBERT LEVERETT, deceased,** | ) | |
| | ) | |
| **Plaintiff.** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 3:06-CV-000128-DRB** |
| | ) | |
| **MERCK & CO., INC., a foreign** | ) | |
| **Corporation; ANNE BRANDON, an** | ) | |
| **Individual; LAMONDE RUSSELL, an** | ) | |
| **Individual; and fictitious Defendants** | ) | |
| **A, B, C & D, being those persons, firms** | ) | |
| **or Corporations whose fraud, scheme to** | ) | |
| **defraud, and/or other wrongful conduct** | ) | |
| **caused or contributed to the Plaintiff's** | ) | |
| **injuries and damages, and whose true** | ) | |
| **names and identities are presently** | ) | |
| **unknown to Plaintiff, but will be** | ) | |
| **substituted by amendment when** | ) | |
| **ascertained,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>BRIEF IN SUPPORT OF MOTION TO REMAND</u>**

Plaintiff, Rosemary Leverett, hereby submits her brief in support of her Motion to Remand. For the following reasons, set forth more fully below, Plaintiff requests this Court enter an order remanding this case to the Circuit Court of Tallapoosa County, Alabama:

1. This Court lacks subject matter jurisdiction. There is not complete diversity of citizenship, and Merck & Co., Inc., is unable to show fraudulent joinder.

2. The removal was procedurally defective because Merck & Co., Inc., failed to obtain the consent of all served defendants prior to removal.

1

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

This product liability action arises from the injuries and resulting death of Robert Leverett as a result of taking the prescription drug VIOXX (Rofecoxib), a prescription drug designed to treat pain through reduced inflammation.  Mr. Leverett was prescribed and used VIOXX for fourteen (14) months before suffering a fatal heart attack on January 7, 2004.  (Compl. ¶ 15.)  As a direct and proximate result of taking VIOXX, Mr. Leverett suffered injuries including heart attack, physical pain and suffering, and emotional distress, which ultimately led to his death.  (Compl. ¶¶ 1, 18.)

Defendant Merck & Co., Inc. (hereinafter "Defendant Merck"), Defendants Anne Brandon and Lamonde Russell (hereinafter the "Resident Defendants"), and Fictitious Defendants A, B, C, & D, hereinafter collectively referred to as "the Defendants," designed, manufactured, marketed, distributed, and/or otherwise sold VIOXX despite knowing  that VIOXX caused serious, life-threatening side effects.  (Compl. ¶¶ 11-14.)  The Defendants encouraged the use of VIOXX through an aggressive marketing campaign including through its detail sales representatives visiting physicians and through direct-to-consumer advertising.    (Compl. ¶  13.)    The direct-to-consumer advertising included advertisements on television and in major magazines and newspapers as well as direct mail.  In addition, the Defendants misrepresented the effectiveness of VIOXX and concealed the possibility of serious side effects.  (Compl. ¶ 14.)    The Defendants knew of the defective and unreasonably dangerous nature of VIOXX, yet continued to design, manufacture, and sell VIOXX so as to maximize gross sales and profits in conscious disregard of the foreseeable harm caused by VIOXX.

Though they were aware that VIOXX was unreasonably dangerous as designed, the Defendants failed to adequately test VIOXX and failed to warn the public. The Defendants also failed to provide Mr. Leverett with timely and adequate post-marketing warnings or instructions after becoming aware of the risk of injury from taking VIOXX. (Compl. ¶¶ 17-20.)

Furthermore, Defendants failed to exercise ordinary care and were negligent in the manufacture, marketing, sale, and testing of VIOXX as they placed it into the stream of commerce. Despite knowledge that VIOXX caused serious side effects, the Defendants continued to market VIOXX to the public, including Mr. Leverett, when there were safer alternative methods of treatment. (Compl. ¶¶ 22-24.)

Finally, the Defendants breached express and implied warranties made in relation to VIOXX. Both before Mr. Leverett was first prescribed VIOXX and during the period in which he ingested VIOXX, the Defendants expressly warranted and represented that VIOXX was safe (Compl. ¶ 27), and impliedly warranted that VIOXX was safe and fit for its intended, ordinary uses, (Compl. ¶ 32). Mr. Leverett reasonably relied on those representations and on the Defendants' superior knowledge as to the safety and fitness for the intended use of VIOXX. (Compl. ¶ 33.) Contrary to those warranties and representations, VIOXX was not safe and could and did cause serious side effects, and accordingly was not fit for its intended, ordinary purpose. (Compl. ¶ 34.) At the time the Defendants marketed, sold and distributed VIOXX for use by Mr. Leverett, the Defendants knew their representations about the safety of VIOXX were false or they made those representations with reckless disregard for their falsity. (Compl. ¶¶ 37, 39.)

The Defendants' wrongful acts or omissions were a contributing or proximate cause of Plaintiff's injuries and Mr. Leverett's injuries and death.

On January 5, 2006, Plaintiff filed suit in the Circuit Court of Tallapoosa County, Alabama. Plaintiff asserts various causes of action against the Defendants, including strict product liability under the AEMLD, negligence, breach of express warranty, breach of implied warranty, fraud, fraudulent misrepresentation, wrongful death, and loss of consortium.

On February 9, 2006, the Defendants filed a Notice of Removal with this Court. Plaintiff now urges this Court to remand this action to state court in accordance with 28 U.S.C. § 1447(c).

## II.    SUMMARY OF ARGUMENT

This case represents one of many attempts by Defendant Merck to "manufacture" diversity jurisdiction, with total disregard for whether such jurisdiction actually exists. Merck's statement that Plaintiff employs a "common tactic… to attempt to defeat diversity" is an affront to Plaintiff's due process right to seek relief from those who are responsible for her husband's death. (Def.'s Notice of Removal ¶ 19.) This type of rote removal by the Defendants should perhaps lead to development by this and other courts of a doctrine of "fraudulent removal."

The sole question before this Court is whether this action should be remanded as having been improvidently removed. First, complete diversity of citizenship is lacking. Plaintiff is a resident of Alabama. (Compl. ¶ 2.) The deceased, Mr. Leverett, was a resident of Tallapoosa County, Alabama. (Compl. ¶ 3.) Defendant Merck is a New Jersey corporation with its principal place of business in New Jersey. (Compl. ¶ 4.) The

Resident Defendants, both sales representatives of Merck, are residents of Alabama. (Compl. ¶¶ 5-6.)  Thus, complete diversity of citizenship is absent.

Although Defendant Merck claims that the Resident Defendants were fraudulently joined, the facts alleged refute this.  Plaintiff's Complaint alleges claims against all the Defendants that, if proved at trial, will sustain a jury verdict.  These allegations must be considered according to the well-established and logical standards set out herein.

Further, because Defendant Merck failed to have all served defendants join in their Notice of Removal, the removal in this case was procedurally defective. Consequently, remand is appropriate.

### III.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1447(c), after a case has been removed to federal district court but "at any time before final judgment," the plaintiff may move for remand, and "the case *shall* be remanded [if] it appears that the district court lacks subject matter jurisdiction" (emphasis added).  It is well settled that federal courts are courts of limited jurisdiction and are "empowered to hear only cases within the judicial power of the United States as defined by Article III of the Constitution," or authorized by Congress. University of South Alabama v. American Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Because the statutes governing removal are jurisdictional, and because removal jurisdiction raises significant federalism concerns, removal statutes must be strictly construed in favor of state court jurisdiction and against removal.  See Shamrock Oil & Gas v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868 (1941); University of South Alabama, 168 F.3d at 411; Clay v.

Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1221 (M.D. Ala. 1999)(DeMent, J.).

"An action is not properly removable if it consists of a non-separable controversy involving both resident and nonresident defendants." Coker v. Amoco Oil Co., Inc., 709 F.2d 1433, 1439 (11th Cir. 1983). Thus, where a removing defendant asserts federal subject matter jurisdiction based on an amount in controversy over $75,000 and the diversity of citizenship of the parties, the defendant must show there is actually complete diversity, that is, every plaintiff must be diverse from every defendant. Triggs v. John Crum Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) (citing Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)).

On a motion to remand, the defendants, as the removing parties, bear the burden of establishing federal subject matter jurisdiction. Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998). Because federal courts are courts of limited jurisdiction, all doubts about federal subject matter jurisdiction on removal should be resolved in favor of remand to state court, University of South Alabama, 168 F.3d at 411; Pacheco de Perez, 139 F.3d at 1373; Seroyer v. Pfizer, Inc., 991 F. Supp. 1308, 1312 (M.D. Ala. 1997), and all questions of fact and controlling law should be resolved in favor of the plaintiff, Shamrock Oil, 313 U.S. at 108-09; University of South Alabama, 168 F.3d at 411.

## IV.    ARGUMENT

### A.    Diversity Jurisdiction Does Not Exist.

Defendant Merck does not dispute that complete diversity is missing on the face of Plaintiff's Complaint. Rather, Defendant Merck, in contravention of the settled law of

this State, contends that the citizenship of the Resident Defendants should be disregarded on the ground that they were fraudulently joined. Defendant Merck has utterly failed to carry its burden on this issue.

### 1.    Standard for Fraudulent Joinder

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs, 154 F.3d at 1287. Arguments regarding fraudulent joinder fail if there is any possibility that a state court would find that the Complaint states a cause of action against the Resident Defendants. Id. at 1287. The removing party bears the burden of showing fraudulent joinder. See Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); see also, Pacheco de Perez, 139 F.3d at 1380. That burden is a heavy one. Pacheco de Perez, 139 F.3d at 1380; Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (1981). To prove that a resident defendant has been fraudulently joined, the removing defendants must show either that "there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Coker, 709 F.2d at 1440; Pacheco de Perez, 139 F.3d at 1380; Crowe, 113 F.3d at 1538.

"While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' the jurisdictional inquiry 'must not subsume substantive determination.'" Crowe, 113 F.3d at 1538 (quoting B. Inc., 663 F.2d at 550)(citations omitted). "[T]he trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." Id. (quoting B., Inc., 663 F.2d a 548-49). "When considering a motion

7

for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." <u>Crowe</u>, 113 F.3d at 1538.

According to the Court in <u>Crowe</u>:

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved."

<u>Id.</u> at 1541-42 (quoting <u>B., Inc.</u>, 663 F.2d at 550).

Stated differently, "[i]n the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." <u>Crowe</u>, 113 F.3d at 1542. "Where there have been allegations of fraudulent joinder . . . the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham … and is not fraudulent in fact or in law." <u>B., Inc.</u>, 663 F.2d at 550 (quoting <u>Bobby Jones Garden Apartments v. Suleski</u>, 391 F.2d 172, 177 (5th Cir. 1968)).

### 2.    The Resident Defendants Are Not Fraudulently Joined.

Defendant Merck has made no claim that Plaintiff fraudulently pled jurisdictional facts. Accordingly, this Court's inquiry is limited to determining whether Plaintiff has a *possibility* of stating a valid cause of action against the Resident Defendants under state law. <u>See</u> <u>Triggs</u>, 154 F.3d at 1287; <u>Crowe</u>, 113 F.3d at 1538. Where, as here, the Notice of Removal is filed before Plaintiff has had full opportunity to develop her claims against

the Resident Defendants through discovery, Alabama federal courts have assessed those claims in accordance with the standard of Fed. R. Civ. P. 11. See Clay, 77 F. Supp. 2d at 1224 (De Ment, J.); see also Sellers v. Foremost Ins. Co., 924 F. Supp. 1116, 1118-19 (M.D. Ala. 1996) (Thompson, J.). "[T]o block a fraudulent-joinder charge based on lack of evidence, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that his claim against the resident defendant has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Sellers, 924 F. Supp. at 1119. "[T]o block a fraudulent-joinder charge *based on lack of legal support*, a plaintiff need only show that her claim against a resident defendant is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Id. at 1119 n. * (emphasis in original).

In a recent decision by this Court, Judge Fuller cited Coker, stating, "If there is *a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." Coker, 709 F.2d at 1440-1441 (citing Davis v. GMC, 353 F. Supp.2d 1203, 1207 (M.D. Ala. 2005) (emphasis added). This reinforces Plaintiff's argument that he need not have a winning case against a resident defendant, but only have a *possibility* of stating a valid cause of action in order to defeat arguments of fraudulent joinder. Triggs, 154 F.3d at 1287.

Defendant Merck relies upon In re Rezulin Products Liability Litigation, 133 F. Supp. 2d 272 (S.D.N.Y. 2001), In re Baycol Products Litigation, MDL 1431, Order dated March 26, 2004, and Folwer v. Pharmacia & Upjohn et al., CV-04-OT-712-M, Order

dated June 24, 2004, for the general proposition that Plaintiff cannot pursue these claims against the Resident Defendants. (Removal ¶ 17.) Defendant Merck's reliance on these cases fails because these courts applied a standard of "no reasonable basis," *a lower standard*, to determine whether the plaintiffs' claims against non-diverse defendants were sufficiently substantial under Alabama law to defeat jurisdiction, which is substantially different than the "no possibility" standard utilized in the 11th Circuit. See Triggs, 154 F.3d at 1287 (citing Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)). The Second and Eighth Circuits utilize a fraudulent joinder analysis similar to a motion for summary judgment. Under such analysis, where the court makes its decision based solely on the pleadings and affidavits in the record and before formal discovery has taken place, any predictions rendered as to the ultimate liability of the alleged fraudulently joined defendants is inequitable and not in accordance with Eleventh Circuit law.

In Alabama, a plaintiff in defeating a fraudulent joinder argument need not show that he could survive on a motion for summary judgment filed by the in-state defendants. Crowe v. Coleman, 113 F.3d 1536, 1541 (11th Cir. 1997). This is remarkably different from the standard applied in In re Rezulin and In re Baycol. Consequently, the holdings in In re Rezulin and In re Baycol cannot be relied upon to determine liability under Alabama law in this case.

Defendant Merck also contends that a Northern District of Alabama Court holding Fowler v. Pharmacia and Upjohn Company, No. CV-04-PT-712-M, Slip. Op. (N.D. Ala. June 24, 2004), should be applied here to bar any and all claims against Merck sales representatives. However, a reading of Fowler reveals that the non-diverse

defendant at issue in <u>Fowler</u> is not, in fact, a sales representative but rather an Account Manager for an entirely separate corporation, which distributes pharmaceuticals to physicians. Furthermore, <u>Fowler</u> relied upon New York and Minnesota case law, and can easily be distinguished from the facts in the case at bar.

Notwithstanding the inapplicability of <u>Fowler</u> to the facts here, or the application of an entirely different fraudulent joinder standard in determining the outcomes of the authority on which it relied, the <u>Fowler</u> court was only partially persuaded by the reasoning in <u>In re Rezulin</u> and <u>In re Baycol</u>, stating "those courts go further than this court would go in that they may exclude claims against even active, knowledgeable sales reps." <u>Fowler</u>, at 30.

Plaintiff believes the <u>Fowler</u> decision is incorrect under the settled laws of the Eleventh Circuit. Notwithstanding that contention, the facts in <u>Fowler</u> are markedly different making it inapplicable to the present case.

### a. Plaintiff Has Stated Valid Product Liability (AEMLD) Claims Against The Resident Defendants

Plaintiff states valid claims under the AEMLD against the Resident Defendants – Anne Brandon and Lamonde Russell. To establish a prima facie case under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), a plaintiff must demonstrate that:

(1)    He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a)    the seller is engaged in the business of selling such a product, and

(b)    it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

    (2)      Showing the above elements, a plaintiff has proved a prima facie case although

        (a)      the seller has exercised all possible care in the preparation and sale of his product, and

        (b)      the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

See Casrell v. Altec Industries, Inc., 335 So. 2d 128, 132-33 (Ala. 1976); Atkins v. American Motors Corp., 335 So. 2d 134, 141 (Ala. 1976).

Further, it is well settled Alabama law that employees of a company may properly be held liable under the AEMLD for their participation in the torts of the company. Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So. 2d 774, 775 (Ala. 1986). In the case at bar, the Resident Defendants marketed VIOXX to physicians, including Mr. Leverett's physician, by "calling" on physicians, distributing samples to be given to patients, conducting educational seminars, and distributing sales literature. The Resident Defendants, in communications to physicians, compared the efficacy of VIOXX to other existing drugs, sought to distinguish VIOXX from other drugs already on the market, and worked to persuade physicians to prescribe VIOXX to their patients. The Resident Defendants provided physicians with VIOXX product information. Throughout these activities, the Resident Defendants worked to increase the sales of VIOXX and their own, personal financial gain.

Plaintiff anticipates that discovery will show that the Resident Defendants' knowledge concerning VIOXX was superior to the knowledge held by the physicians to whom they made sales calls. Plaintiff also anticipates that discovery will show that Mr. Leverett's prescribing physician relied on information provided by the Resident Defendants. The Resident Defendants provided to Mr. Leverett's physician incorrect,

misleading or incomplete information (such as inadequate warnings of risks of harm and adverse effects from the use of VIOXX) – and Mr. Leverett's physician passed this erroneous information on to consumers.  Mr. Leverett relied on such information through the representations of his physician.  If these allegations are proven to be true, which Plaintiff expects that they will be, a finding of individual liability under AEMLD against the Resident Defendants would be consistent with the rule under Alabama law that "officers and <u>employees</u> of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."  <u>Ex parte Charles Bell Pontiac</u>, 496 So. 2d at 775 (<u>citing</u> <u>Candy H. v. Redemption Ranch, Inc.</u>, 563 F. Supp. 505, 513 (M.D. Ala. 1983)); <u>see</u> <u>Clay v. Brown & Williamson Tobacco Corp.</u>, 77 F. Supp. 2d 1220, 1224 (M.D. Ala. 1999); <u>see</u> <u>Seaborn v. R. J. Reynolds Tobacco Co.</u>, 1996 WL 943621 (M.D. Ala., Dec. 30, 1996)(NO. CIV. A. 96-T-1540-N).

In <u>Clay</u> and <u>Seaborn</u>, relying on the general principle that officers or employees of a corporation are liable for torts in which they have personally participated, the District Court found in both cases that to the extent a manufacturer defendant allegedly violated AEMLD, "it acted through its employees; the company does not employ ghosts."  <u>Clay</u>, 77 F. Supp. 2d at 1224; <u>Seaborn</u>, 1996 WL 943621, at *3.  The District Court allowed plaintiffs to pursue the distributors and employee sales representatives individually -- even in the absence of any personal contact with the plaintiffs -- and to substitute new individual defendants in the event plaintiffs had named the wrong individuals at the outset.  In each case, the court rejected defendants' claim of fraudulent joinder and remanded the cases to state court.

Other United States District Courts also have consistently rejected arguments that in-state defendant sales representatives are fraudulently joined in the context of an AEMLD action involving a defective drug.  See Barry Pace, et al. v Parke-Davis, No. 3:00-3046 (N.D. Ala. Nov. 21, 2000)(Johnson, I); see also Donald McCaffery v. Warner-Lambert Co., et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000)(Propst, R); see also Acton v. R.J. Reynolds Tobacco Co., No. 96-C-2737-W (N.D. Ala. Oct. 23, 1996).

Defendant Merck cites Bloodsworth v. Smith & Nephew, 2005 WL 3470337 (M.D. Ala., Dec. 19, 2005), for the proposition that Plaintiff cannot show that the Resident Defendants were personally involved in the wrongful acts herein.   In Bloodsworth, the Court relied upon the in-state sales representative's declaration which provided that he was unaware of any defect in the product, and that he only took orders and delivered the products to physicians in the original sealed packages. Id. at *7.

In the case at bar, the Resident Defendants attest that they did not provide information regarding VIOXX directly to Plaintiff.  They further attest, in general terms, that they were not involved in the manufacture, development or testing of Vioxx, that the physicians were in a better position to make determinations regarding prescribing VIOXX, that they did not sell or take orders of VIOXX, and that they made no KNOWING misrepresentations concerning the safety or efficacy of VIOXX, (Decl. of Lamonde Russell and Anne Brandon).  However, the declarations are noticeably absent of any information regarding their interactions with Mr. Leverett's prescribing physician. The declarations are further absent of any information regarding the hundreds upon hundreds of sample packets the Resident Defendants provided to Mr. Leverett's prescribing physician and physicians across Alabama, which they expected to be given to

individuals, including Mr. Leverett.  Further, the Resident Defendants do not mention the numerous sales aides utilized by them, some directing them to dodge questions from doctors regarding the cardiovascular risks of VIOXX, and others which have now been shown in corporate depositions to present fraudulent safety and efficacy information of VIOXX (See Exhibits A-K to Complaint.)  Although the Resident Defendants denied "knowingly" providing false information regarding the safety and efficacy of VIOXX, (Decl. ¶ 6), their declarations clearly leave open the likelihood that false information was distributed to physicians, including Mr. Leverett's physician, and, based upon the sales materials attached to Plaintiff's Complaint, cast doubt on the veracity of the Resident Defendants' declarations.

Because defendants who distribute dangerous products, as well as their employees, may be held liable under the AEMLD, Plaintiff has stated valid claims against the Resident Defendant sales representatives under the AEMLD.

> **b.    Plaintiff Has Alleged Valid Breach of Warranty Claims Against The Resident Defendants**

With little in the way of explanation, Defendant Merck asserts that Plaintiff's breach of express and implied warranty claims against the Resident Defendants cannot be maintained because the Resident Defendants are not "sellers."  (Removal ¶ 27.)  In support of its position, Defendant Merck again cites Bloodsworth.  In Bloodsworth, the Court relies upon an unpublished order in the Baycol MDL, a Minnesota District Court opinion, which interprets Alabama law to prohibit breach of warranty claims against pharmaceutical sales representatives.  See In re Baycol Products Liability Litigation, MDL 1431, *6 - *7.  In support of its position, the Court in In re Baycol only cites one Alabama opinion – a case involving a building contractor who contracted for the

installation of a sliding door – where a building contractor was found not be a seller within the meaning of Ala. Code § 7-2-103.  Clearly, whether a pharmaceutical sales representative is considered a seller under Ala. Code § 7-3-103 is not settled law in Alabama.

In fact, Alabama courts have never held that pharmaceutical sales representatives are not sellers for purposes of breach of express and implied warranties.  In the case at bar, the Resident Defendants were charged with the responsibility of marketing, distributing, and selling VIOXX to physicians.  "By its terms, a seller is anyone who sells, including a manufacturer or distributor."  <u>Bishop v. Faroy Sales</u>, 336 So. 2d 1340, 1343 (Ala. 1976).  Any lack of relationship between the Resident Defendants and Plaintiff does not bar a claim of breach of warranty.  <u>Bishop</u>, 336 So. 2d at 1345.  Defendant Merck's conclusory statements in its Notice of Removal are clearly insufficient to overcome the burden in favor the viability of Plaintiff's claims.

<b>c.      Plaintiff Has Alleged Valid Claims Of Fraud And<br>Fraudulent Misrepresentation And Suppression<br>Against The Resident Defendants</b>

Under Alabama law, in order to state a claim for fraud and fraudulent misrepresentation, a plaintiff must show that the defendant made a misrepresentation of material fact, that he made it willfully to deceive, recklessly, without knowledge, or mistakenly, that the misrepresentation was justifiably relied on by the plaintiff under the circumstances, and that the misrepresentation caused damage as a proximate consequence. Ala. Code Ann. § 6-5-101; <u>Harrington v. Johnson-Rast & Hays Co.</u>, 577 So.2d 437 (Ala.1991).  In the case at bar, Plaintiff alleges that the Resident Defendants negligently, recklessly, intentionally and fraudulently made material misrepresentations

16

that VIOXX was safe.  (Compl. ¶ 37.)  The Resident Defendants did so with the intent to induce physicians to prescribe and for consumers, including Mr. Leverett, to purchase VIOXX.  (Compl. ¶ 52.)  Moreover, Plaintiff alleges that "[a]t the time the Defendants made these representations, the Defendants were aware of the falsity of these representations and/or made these representations with reckless disregard to the truth." (Compl. ¶ 39.)  Lastly, Plaintiff alleges that "[a]s a result of Defendants' fraud and misrepresentation, Robert suffered injuries and death."  (Compl. ¶ 39.)

Defendant Merck asserts, in its Notice of Removal, that claims of fraud cannot be maintained against the Resident Defendants.  In so arguing, they suggest that Defendants made no representations to Mr. Leverett.  However, it "is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured."  Bloodsworth, 2005 WL at *11 (quoting Thomas v. Halstead, 605 So. 2d 1181, 1184 (Ala. 1992)).  "If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place." Id. at *11 (quoting Thomas, 605 So. 2d at 1184).  It is well settled in Alabama law that "there is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation."  Id. at *11 (quoting Wheelan v. Sessions, 50 F. Supp. 2d 1168, 1174 (M.D. Ala. 1999) (DeMent, J.); see Colonial Bank of Ala. V. Ridley & Schweigert, 551 So. 2d 390, 396 (Ala. 1989); see also Brasher v. Sandoz Pharmaceuticals Corp., 2001 U.S. Dist. Lexis 18364, at *31 - *33 (N.D. Ala. Sept. 21, 2001) (wherein the Court found that the plaintiffs "clearly were the parties who were injured by the alleged fraud.  It also was clear that the drug manufacturer 'for its own purposes of promoting its product and making a profit,

intended to reach and influence the patients of obstetricians, such as the plaintiffs.'") Thus, Defendant Merck's position that Plaintiff has no claim against the Resident Defendants because the Resident Defendants made no representations directly to Plaintiff is without merit.

Furthermore, District Courts in Alabama have repeatedly rejected similar fraudulent joinder claims in the context of fraudulent misrepresentation and suppression claims against pharmaceutical sales representatives, remanding the cases to state court. See Floyd v. Wyeth, No. 03-C-2564-M (N.D. Ala. Oct. 20, 2003) (Clemon, J.); see Crittenden v. Wyeth, No. 03-T-920-N (M.D. Ala. Nov. 21, 2003) (Thompson, J.); see Terrell v. Wyeth, No. CV-03-BE-2876-S (N.D. Ala. Dec. 12, 2003) (Bowdre, J.) ("Although the plaintiffs' claims against defendant Parker appear to raise novel questions of Alabama state law, this court will not speculate that the plaintiffs have *no* possibility of establishing a cause of action against this non-diverse defendant.   Little, if any, discovery has been done to-date in this case; thus, it would be premature for this court to make rash decisions regarding the nature and the timing of the injury sustained by the plaintiffs, or the employment history of defendant Parker.  Nor can the court conclusively determine that plaintiffs would not be successful in urging its various theories under Alabama law."); see Ballard v. Wyeth, No. 03-T-1255-N (N.D. Ala. Jan. 23, 2004) (Thompson, J.); see Brunson v. Wyeth, No. 03-T-1167-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); see Blair v. Wyeth, No. 03-T-1251-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); see Storey v. Wyeth, No. CV-04-BE-27-E (N.D. Ala. Jan. 30, 2004) (Bowdre, J.); see Cash v. Wyeth, No. 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004) (Armstrong, Mag. J.); see Marshal v. Wyeth, No. CV-04-TMP-179-S (N.D. Ala. Feb. 18,

2004) (Putnam, Mag. J.); see McGowan v. Wyeth, No. CV-04-TMP-298-S (N.D. Ala. Feb. 24, 2004) (Putnam, Mag. J.); see Johnson v. Wyeth, No. CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004) (Putnam, Mag. J.); see Bradford v. Wyeth, No. 03-P-3157-5 (N.D. Ala. Feb. 27, 2004) (Proctor, J.); see Smith v. Wyeth, No. 04-P-226-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); see Boudreaux v. Wyeth, No. CV-04-P-227-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); see Bridges v. Wyeth, No. 04-AR-0297-J (N.D. Ala. Mar. 2, 2004) (Acker, J.); see Hough v. Wyeth, No. 04-H-393-S (N.D. Ala. Mar. 5, 2004) (Hancock, J.); see Brogden v. Wyeth, No. 04-T-068-S (M.D. Ala. Mar. 8, 2004) (Thompson, J.); see Reeder v. Wyeth, No. 04-T-066-N (M.D. Ala. Mar. 8, 2004) (Thompson, J.); see Eaton v. Wyeth, No. CV-04-P-380-M (N.D. Ala. Mar. 9, 2004) (Proctor, J.); see Allen v. Wyeth, No. 04-CV-0238-T (M.D. Ala. Apr. 9, 2004) (Thompson, J.); see Chestnut v. Wyeth, No. 04-CV-0295-T (M.D. Ala. May 3, 2004) (Thompson, J.); see King v. Wyeth, No. 04-CV-0409-T (M.D. Ala. May 24, 2004) (Thompson, J.); see Culpepper v. Wyeth, No. 04-CV-0411-T (M.D. Ala. May 24, 2004) (Thompson, J.); see Braden v. Wyeth, No. 04-CV-0384-T (M.D. Ala. May 24, 2004) (Thompson, J.); see Cross v. Wyeth, No. 03-0882-BH-M (S.D. Ala. Mar. 29, 2004) (Hand, J.); see Bennett v. Wyeth, No. 04-CV-0416-T (M.D. Ala. June 2, 2004) (Thompson, J.).[1]

District Courts in Alabama have rightly found that plaintiffs who allege claims of fraudulent misrepresentation and suppression against sales representatives of drug companies have alleged valid claims under Alabama law. Accordingly, these Resident Defendants are not fraudulently joined in this case.

[1] See 'Exhibit A,' attached and filed with this brief.

**d.    Plaintiff's Complaint Was Pled With Sufficient Particularity to Support Claims Against the Resident Defendants.**

Defendant Merck also asserts that Plaintiff failed to plead her claim of fraudulent misrepresentation with particularity. However, in her Complaint, Plaintiff sufficiently alleges that the Resident Defendants fraudulently misrepresented and/or suppressed material information regarding the safety and efficacy of VIOXX and its harmful side effects in order to induce physicians to prescribe these drugs and to induce consumers, including Mr. Leverett, to purchase VIOXX. (Compl. ¶¶ 41-52). Plaintiff further alleged that the Resident Defendants misrepresented and/or suppressed the fact that VIOXX was not safe and that the Defendants were under a duty to communicate this information to Plaintiff, (Compl. ¶¶ 39, 53), that the Resident Defendants marketed, sold, supplied and/or otherwise distributed VIOXX, (Compl. ¶¶ 17-19), that VIOXX was defective and unreasonably dangerous as designed, was unreasonably dangerous due to inadequate testing, and was defective as marketed due to inadequate warnings or instructions (Compl.¶¶ 17-19), that the Defendants failed to warn Mr. Leverett of the dangers of VIOXX therapy, (Compl.¶¶ 38-39), that the Defendants failed to provide post-marketing warnings to Mr. Leverett after he began to take the drug, (Comp. ¶ 20), and that as a direct and proximate result of the Defendants placing VIOXX on the market and Mr. Leverett's ingestion of VIOXX, Mr. Leverett suffered injuries including heart attack and death. (Compl. ¶ 20.) These allegations are sufficient to support the claims asserted by Plaintiff in her Complaint; likewise, the claims are pled with sufficient particularity to support Plaintiff's fraud claims against the Defendants, including the Resident Defendants.

Further, Plaintiff attached as exhibits to her Complaint sales brochures and sales training materials utilized by Merck sales representatives, including the Resident Defendants, to market, distribute, and sell VIOXX to physicians, with the ultimate goal of patients, including Mr. Leverett, ingesting VIOXX for treatment of pain. Those sales materials are more than sufficient evidence to support Plaintiff's claims against the Resident Defendants.

To the extent the Court finds Plaintiff's Complaint deficient to satisfy the heightened pleading requirements, such a finding should not lead this Court to an automatic finding of fraudulent joinder. See Bloodsworth, 2005 WL at *11 (citing Duffin v. Honeywell Intern., Inc., 312 F. Supp. 2nd 869, 870 (N.D. Miss. 2004) ("observing 'that a plaintiff should ordinarily be given an opportunity to amend her complaint to allege fraud with greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder'") (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n. 6 (5th Cir. 2000)).

**B.    Defendant Merck Has Failed To Obtain Proper Consent For Removal From The Properly Joined Resident Defendants**

"The law is clear that under 28 U.S.C. § 1446(a), removal procedure requires that all defendants join in the removal petition." Chicago, R.I. & P.R. Co. v. Martin, 178 U.S. 245, 20 S. Ct. 854, 44 L. Ed. 1055 (1900); P.P. Farmers' Elevator Co. v. Farmers Elevator Mutual Ins. Co., 7 Cir., 1968, 395 F.2d 546. However, courts have stated that only unnecessary nominal parties are not required to join in the petition for removal. Shattuck v. North British and Mercantile Ins. Co., 8 Cir., 1893, 58 F. 609; Stonybrook Tenants Association, Inc. v. Alpert, 194 F. Supp. 552 (D. Conn., 1961). The test of whether or not a named defendant is a nominal party depends on the facts in each case, and an

examination of the facts, not yet fully developed in the District Court, should indicate that this case should be remanded in order to more fully explore the facts involved. Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349, Intern. Printing Pressmen and Assistants' Union of North America, 427 F.2d 325, 327 (C.A. Ala. 1970); see Boeing Airplane Co. v. Aeronautical Industrial, 91 F. Supp. 596 (W.D. Wash., 1950).

Here, removal is improper because Defendant Merck has failed to obtain the consent of the properly joined Resident Defendants. These Defendant sales representatives are more than mere "nominal" parties and are indeed properly joined for purposes of this action. Merck has failed to show that these Resident Defendants are nominal parties and consequently, their consent is required in order for this removal to be proper. Because there has not yet been adequate inquiry into the facts of this case in order to determine fully the duties and liabilities of all these Defendants, this Court should declare that these Resident Defendants are more than nominal parties and because their consent for removal was not obtained, this removal by Defendant Merck alone is procedurally improper.

## V.    CONCLUSION

In all of its efforts, Defendant Merck has failed to cite any directly applicable or controlling authority and consequently it has failed in its burden of proving that there is no possibility that Plaintiff can establish a cause of action against the Resident Defendants Anne Brandon and Lamonde Russell. For the reasons outlined above, this

Court lacks subject matter jurisdiction.  Therefore, Plaintiff respectfully urges the Court

to remand this action in its entirety to the Circuit Court of Tallapoosa County, Alabama.

Respectfully submitted this 16th day of February, 2006.

/s/  J. Paul Sizemore_____
**ANDY D. BIRCHFIELD, JR. (BIR006)**
**J. PAUL SIZEMORE (SIZ004)**
**BENJAMIN L. LOCKLAR (LOC009)**
**W. ROGER SMITH, III (SMI257)**
**Attorneys for Plaintiff**

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,**
**  PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone:  (334) 269-2343
Fax:  (334) 223-1236

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the

parties as listed below by placing a copy of same in the United States Mail, first class,

postage prepaid on this the 16th day of February, 2006.

Alan T. Hargrove, Jr.
Mike Brock
F. Chadwick Morriss
**RUSHTON, STAKELY, JOHNSTON**
**  & GARRETT, P.A.**
Post Office Box 270
Montgomery, Alabama  36101-0270

/s/  J. Paul Sizemore_____

**OF COUNSEL**